Wright, J.,
delivered the opinion of the Court.
This is an action of assumpsit commenced by Clater against the plaintiffs in error, for work and labor done. He obtained a verdict and judgment in the Circuit Court for six hundred dollars, and upon his releasing three hundred dollars of it, the Circuit Judge overruled their motion for a new trial, and they have appealed to this Court. Shuman, Hitchcock & Co., became the contractors to do the work of certain sections on the Edgefield and Kentucky Railroad, and engaged Clater to clear and roll away the timber, which he done. It was for this work the recovery was had.
The firm of Shuman, Hitchcock & Co., was composed of one Hitchcock, and one of the plaintiffs in error, George S. Shuman, but whether Lawson Tilton, the other plaintiff in error, was also of said firm, does not very clearly appear. *446 But, for the purpose of this controversy, we shall take it he was, the jury having so found, and there being evidence to support their verdict. The defence relied upon by the plaintiffs in error in the Circuit Court was, that they had finally settled with Clater, and paid him the entire amount of his demand. Many witnesses were examined on this subject. Hays proved that Shuman paid his hands monthly; did not know that he paid Clater monthly; but he was in the habit, or it was a rule of his, to pay his hands monthly. Cane, an engineer on the road, proved the rule of Shuman to pay his hands monthly, on the 15th of each month, and that they were generally paid, but could not say that he always paid them, or that he paid all of them, or that he paid Clater. Wm. Phillips proved that he and his two sons had worked for Clater in cutting down and clearing away the timber on the road, for which Clater had since paid them; that Clater told him he expected to get the money from Shuman to pay him with ; that on settlement day, in March, 1858, he called upon Mr. Tilton with Clater; that Tilton, after examining the, account, said to Clater, that he was entitled to $>2.30, and offered to pay him the money; that Clater, with some anger, insisted that he was entitled to more, and refused to take the money offered him by Tilton; that witness understood the parties as attempting to have a settlement for the month last previous to that day ; that nothing was said about a final settlement, or any other work than that which had been done in the month last previous. E. S. Cheatham, the President of the road, proved that the railroad company paid Shuman, Hitchcock & Co., monthly, on the 10th day of every month; that this was done to enable them to pay their hands. Wm. Ryan proved that just before Clater left the service of Shu-man finally, Tilton called upon him, and borrowed $40.00 of him; that he said he wanted it to payoff Clater; that he loaned him the money, but did not see him pay it to'Clater ; that he witnessed, the next morning, a writing which was drawn up by Tilton, and read to Clater three times, and then signed by Clater, or rather he made his mark to it, not being *447 able to read or write; that Tilton told witness tvben he borrowed the money of him, that he intended to discharge Clater; that Clater worked an hour or so the next day, and finally quit. The writing so read and signed was not produced, and the witness was not allowed to speak of its contents, and it does not appear in this record what has become of it. McAndrews proved that he knew that Tilton paid the hands monthly, and that Clater regularly appeared with the others; sometimes he did not appear on the very day, but if not, he came in a day or two. The proof showed that Clater began the work in 1856, and quit in the spring of 1858, and that it was Tilton’s business to pay off the hands, for which purpose he kept an office.
There is some other proof in the record, which tends to show' that Clater had not been fully paid; but the weight of the entire evidence, in our opinion, is, that he had. Still, if the case rested upon the testimony, the effect which this Court is required to give to the verdict of the jury would prevent a reversal.
Whether the judgment is to stand must, therefore, depend upon the charge of the Circuit Judge to the jury. Among other things not excepted to, he instructed them: that a general settlement of all accounts would be presumed to embrace all the dealings between the parties anterior to that date, and it would require proof to show that any item had been left out. That a partial settlement as to a particular transaction, would have the same effect as to that particular transaction, but would raise no presumption as to how the account stood outside of that transaction. We understand this charge, as applied to the facts of this case, to mean, that though a general settlement of all accounts between these parties would create the presumption that all the dealings betwreen them, anterior to that date, had been embraced; yet, that a settlement for a particular month, or other specified period — though it W'ould have the same effect as to that month, or period — would not create any presumption of the payment of anterior demands. So we think the jury must have understood it. This *448 charge is erroneous. It is laid down in 1 Greenl. Ev., sec. 88, that a receipt for the last year’s or quarter’s rent is prima facie evidence of the payment of all the rent previously accrued. In Chitty on Contracts, 749, it is said, a receipt for rent due on a certain day, is strong presumptive evidence that the former rents have been regularly discharged. And in Attleborough v. Middleborough, 10 Pick., 878, it is held, that a highway tax of one year was not included in a hill for the next, raises the presumption that it was paid. So we think in this case, the settlement with the plaintiff for his services for a particular month or other period of time, was prima fade evidence of the payment for all labor or services previously rendered by him to this firm. If the evidence was not sufficient to show a final settlement, there certainly was proof of monthly settlements, even down as late as the month previous to settlement day in March, 1858, which, if left to the jury under a proper charge, might have produced a very different result.
The judgment of the Circuit Court will, therefore, be reversed, and a new trial awarded.